UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEANNA T.,

              Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

_____

**DECISION AND ORDER**

6:23-CV-06034 EAW

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Deanna T. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB").  (Dkt. 1).  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Dkt. 6; Dkt. 8) and Plaintiff's reply (Dkt. 11).  For the reasons discussed below, the Commissioner's motion (Dkt. 8) is granted and Plaintiff's motion (Dkt. 6) is denied.

**BACKGROUND**

Plaintiff protectively filed her application for DIB on September 22, 2020. (Dkt. 5 at 19, 54).[1]  In her application, Plaintiff alleged disability beginning January 1, 2019. (*Id.* at 19, 56).  Plaintiff's application was initially denied on February 23, 2021, and on reconsideration on May 20, 2021. (*Id.* at 19, 85-88, 99-106).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Jeremy Eldred on January 31, 2022. (*Id.* at 31-53).  At the hearing, Plaintiff amended her alleged onset date to January 1, 2016. (*Id.* at 35).  On February 14, 2022, the ALJ issued an unfavorable decision. (*Id.* at 16-30).  Plaintiff requested Appeals Council review; her request was denied on November 17, 2022, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10).  This action followed.

**LEGAL STANDARD**

I.   **District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more

---

[1]   When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.  The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2022. (Dkt.

5 at 21). At step one, the ALJ determined that Plaintiff had engaged in substantial gainful activity from April 2018 to October 2018 but had not otherwise engaged in substantial gainful activity since the amended alleged onset date of January 1, 2016. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of degenerative changes of the lumbosacral spine, degenerative disc disease of the cervical spine, and obesity. (*Id.* at 22). The ALJ also found that Plaintiff's diagnosed depressive disorder and anxiety disorder were non-severe. (*Id.* at 22).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 23). In particular, the ALJ considered the requirements of Listings 1.15 and 1.16, as well as the effect of Plaintiff's obesity pursuant to Social Security Ruling 19-2p, in reaching his conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). (*Id.*). At step four, the ALJ relied on the testimony of a vocational expert ("VE") to determine that Plaintiff was capable of performing her past relevant work as a data clerk. (*Id.* at 26). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.*).

## II.   The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to reverse the Commissioner's decision and remand for calculation and payment of benefits, arguing that: (1) the ALJ failed to properly assess the opinion of treating physician Dr. Michael Foote, including by failing to obtain additional records; and (2) the ALJ improperly assessed the opinions of consultative physician Dr.

Susan Dantoni and state agency reviewing physicians Dr. S. Sonthineni and Dr. R. Abueg. (*See* Dkt. 6-1 at 1).   The Court is not persuaded by these arguments, for the reasons discussed below.

### A.    Evaluation of Dr. Foote's Opinion

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).   Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."   20 C.F.R. § 404.1520c(a).   Instead, when a medical source provides one or more medical opinions, the Commissioner will consider the persuasiveness of those medical opinions using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections.   *Id*.   Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."   *Id*. at § 404.1520c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency.   *Id*. at § 404.1520c(a).   With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or

her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1).  With respect to "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources . . ., the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id.* at § 404.1520c(b).  Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion.  20 C.F.R. § 404.1520c(b)(2). The ALJ may—but is not required to—explain how he considered the remaining factors. *Id*.

In this case, Dr. Foote provided two medical opinions regarding Plaintiff's functional limitations, both dated January 3, 2022.  (Dkt. 5 at 551-54).  In these opinions, Dr. Foote opined, among other things, that Plaintiff had four to five headaches per week lasting at least one hour, that these headaches would be worsened by moving around and noise, and that these headaches would likely cause Plaintiff to be absent from work more than four times per month.  (*Id*. at 551-52).  Dr. Foote further opined that Plaintiff's degenerative disc disease and neck pain would constantly cause symptoms severe enough to interfere with the attention and concentration needed to perform even simple work tasks, that Plaintiff would never be able to lift more than 10 pounds and could only rarely lift 10

pounds or less, that Plaintiff could rarely bend or climb stairs, and that Plaintiff's daily functioning was significantly impaired by pain.  (*Id*. at 553-54).

The ALJ found these opinions unpersuasive, concluding that they were "not well supported" because Dr. Foote had "simply cited a 'suspected' diagnosis of cervicogenic headaches, as well as diagnostic imaging of the spine from 2015 to support his conclusions," and because his underlying treatment records did not document ongoing concerns due to headaches, nor did they include "longitudinal physical examination findings consistent with a significant spinal disorder."  (Dkt. 5 at 21).  The ALJ further found Dr. Foote's opinions inconsistent with the evidence or record regarding Plaintiff's activities of daily living, and with the "lack of ongoing treatment from specialists appropriate to her allegedly disabling impairments."  (*Id*.).

Plaintiff takes issue with the ALJ's assessment of Dr. Foote's opinions, arguing that "it is unclear how the record does not support Dr. Foote's opinion."  (Dkt. 6-1 at 14).  The Court disagrees.  As the ALJ explained, contrary to Dr. Foote's report that Plaintiff suffers from multiple lengthy headaches every week, his treatment notes contain no reports of headaches of that duration or frequency.  (Dkt. 5 at 24; *see, e.g., id.* at 257, 278, 284).  Additionally, when Plaintiff was seen by neurologist Eugene Tolomeo on February 27, 2021, she did not report suffering from headaches, nor were headaches included in the list of "medical problems."  (*Id*. at 506-08).

Moreover, and as the ALJ also pointed out, Dr. Foote's physical examinations of Plaintiff do not support his opinion regarding the existence of a disabling spinal disorder.  (*See* Dkt. 5 at 21).  For example, on May 20, 2020, Plaintiff reported to Dr. Foote that "her

back has not been bothering her of late" and that her medication had successfully reduced her neck pain.  (*Id*. at 261).  A physical examination by Dr. Foote on November 23, 2018, revealed normal spinal contour, no tenderness of the costovertebral angle, and thoracolumbar range of motion within normal limits.  (*Id*. at 307).  Physical examination on December 5, 2016, revealed only mild tenderness at the lumbosacral segments bilaterally and mild-moderate reduced active range of motion in the planes of the cervical spine.  (*Id*. at 291).  The ALJ reasonably concluded that these mild findings were not supportive of the extreme limitations set forth in Dr. Foote's opinions.

Plaintiff contends that the imaging studies from 2015 were sufficient by themselves to support Dr. Foote's opinions, because "[n]o other medical professional assessed the diagnostic imaging reports as insufficient to support Plaintiff's subjective complaints or Dr. Foote's assessment of limitations."  (Dkt. 6-1 at 19).  This is incorrect.  Drs. Dantoni, Sonthineni, and Abueg all reviewed the imaging reports (*see* Dkt. 5 at 64, 80, 476), and all concluded that Plaintiff was capable of performing light work as ultimately determined by the ALJ  (*id*. at 63-64, 79-80, 476-77).  It was within the ALJ's discretion to agree with Drs. Dantoni, Sonthineni, and Abueg that the imaging reports were not supportive of the extreme limitations identified by Dr. Foote.

Plaintiff further argues that it was improper for the ALJ to conclude that Dr. Foote's opinion was inconsistent with the evidence of record regarding her activities of daily living, because "there is a critical difference between activities of daily living and keeping a full-time job.'  (Dkt. 6-1 at 19-20 (quotation and alteration omitted)).  Plaintiff's argument misses the point.  The ALJ did not conclude that Plaintiff was not disabled or was capable

of holding full-time employment based on her activities of daily living.  The ALJ concluded that her reported activities of daily living were inconsistent with Dr. Foote's opinions.  This was a reasonable conclusion.  For example, Dr. Foote opined that Plaintiff's impairments would "constantly" cause her to be in such pain that she would be unable to maintain the attention and concentration needed to perform even simple tasks.  (Dkt. 5 at 553). However, Plaintiff reported to the consultative examiner that she had a driver's license and was able to operate a motor vehicle, required no help at home, and was able to cook, do laundry, clean, and shop.  (Dkt. 5 at 475).  Moreover, and as the ALJ noted, Plaintiff actually held a job at substantial gainful activity levels for seven months during the relevant time period.  (*See id*. at 24).  It was not error for the ALJ to find these reports incompatible. *See, e.g., Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) (finding that ALJ did not err in declining to credit medical opinion that was inconsistent with the claimant's reported activities of daily living).

Plaintiff also contends that it was inappropriate for the ALJ to find Dr. Foote's opinions unpersuasive due to the lack of ongoing treatment by any specialists.  (Dkt. 6-1 at 21-22).  However, the ALJ's conclusion was amply supported by the record.  In particular, the medical evidence of record shows that, during the relevant time period, Plaintiff had three initial visits with specialists (a neurologist, a podiatrist, and a physical therapist) for her neck and back pain, but never returned to any of them for additional treatment.  (*See* Dkt. 5 at 506-08, 518, 548-50).  The Court finds no error in the ALJ's conclusion that this evidence is inconsistent with the extreme limitations identified in Dr. Foote's opinions.  *See, e.g., Woods v. Comm'r of Soc. Sec*., No. 20-CV-3438 (GRB), 2021

WL 5149789, at *1 (E.D.N.Y. Oct. 29, 2021); *Livsey v. Comm'r of Soc. Sec.*, No. 1:19-CV-0759 (CJS), 2020 WL 5361663, at *5 (W.D.N.Y. Sept. 8, 2020).

Finally, Plaintiff contends that the ALJ's assessment of Dr. Foote's opinion was based on an incomplete record.   Plaintiff makes two arguments in this regard,   First, because the earliest treatment note from Dr. Foote in the record was dated December 5, 2016, and because the ALJ accepted Plaintiff's amendment of the alleged onset date to January 1, 2016, she contends that the ALJ was obliged to make further attempts to obtain records from Dr. Foote.  (Dkt. 6-1 at 24-25).  Second, Plaintiff contends that because she testified at the hearing that she "underwent physical therapy, massage therapy, chiropractic care, multiple types of injections, and multiple medications for her spinal impairments," the ALJ should have concluded that she "had ongoing treatment from specialists sometime prior to December 2016" and attempted to obtain those records.  (*Id*. at 22).

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011).  "The ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).  However, the ALJ's duty to develop the record is not limitless.  "[W]here there are no obvious gaps in the administrative record, and where the

ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information. . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted).

As to Plaintiff's argument regarding Dr. Foote, the Court does not find that there was an obvious gap in the record regarding his records. In particular, Plaintiff's alleged onset date was January 1, 2016. Dr. Foote's treatment note from December 7, 2016, specifically stated that Plaintiff had been "noncompliant with followup" and that "in light of the medications she is prescribed, she needs to be in the office at least every 4 months." (Dkt. 5 at 292). It is thus not at all obvious that there are additional records from Dr. Foote from within the relevant time period (*i.e.* from January 1, 2016, to December 7, 2016). Further, Plaintiff's representative advised the ALJ at the hearing that the evidence of record was complete. (*Id*. at 34).

Turning to Plaintiff's argument regarding treatment by specialists, the Court again finds no obvious gap in the record. Plaintiff testified at the hearing that she had suffered a neck injury in 2008 or 2009 while working at Lowes and had undergone the following treatment for that injury:

> I've had physical therapy. I've had a lot of injections. I had a trigger point system. I've had . . . shots in between the discs. . . . I've had, I believe it was massage therapy. I went to one different therapist, and they ended up cracking my neck, like chiropractic, and I was told that they didn't do that. I can't, off the top of my head, think of anymore. I had a pain blocker in the back of my neck, too.

(Dkt. 5 at 40-41). Significantly, Plaintiff did not testify that any of this alleged treatment occurred during the relevant time period, nor did she testify that it was ongoing. And, again, Plaintiff's representative advised the ALJ that the record was complete.

Moreover, there was ample evidence in the record for the ALJ to rely upon in making his assessment, including medical opinions from multiple sources, Dr. Foote's treatment records, Dr. Tolomeo's treatment records, Dr. Dantoni's consultative examination, and multiple diagnostic studies.  Under these circumstances, the Court does not find that the ALJ failed to satisfy his duty to develop the record.  In sum, the Court finds no basis for reversal or remand in the ALJ's assessment of Dr. Foote's opinions.

### B.   Evaluation of the Other Opinions of Record

The Court next considers Plaintiff's contention that the ALJ erred in his assessment of the opinions of Drs. Dantoni, Sonthineni, and Abueg.  (*See* Dkt. 6-1 at 27).  In particular, Plaintiff argues that the ALJ failed to adequately explain his conclusion that these physician's opinions were consistent with the evidence of record.   The Court disagrees. First, the ALJ considered the fact that these opinions were consistent with one another. (Dkt. 5 at 25).  Second, the ALJ explained that these opinions were consistent with the evidence from Dr. Dantoni's detailed physical examination of Plaintiff, as well as Plaintiff's reported activities of daily living and her lack of any ongoing treatment from specialists.  (*Id*.).  In other words, the ALJ "not only considered the opinions at issue in connection with each other, but also in connection with the record as whole."  *David C. v. Comm'r of Soc. Sec.*, No. 1:22-CV-00965 EAW, 2024 WL 376598, at *4 (W.D.N.Y. Feb. 1, 2024).

There is no question that Dr. Dantoni's physical examination of Plaintiff is consistent with her opinion and with Drs. Sonthineni's and Abueg's opinions.  Dr. Dantoni observed that Plaintiff had normal gait, could walk on her heels and toes with no assistance,

was able to perform a full squat, had a full range of motion and 5/5 strength in her upper extremities, and had "[f]ull flexion, extension, lateral flexion, and rotary movements bilaterally" in her cervical, thoracic, and lumbar spine.  (Dkt. 5 at 475-76).  And, as previously discussed, the ALJ was within his discretion to consider Plaintiff's activities of daily living and lack of ongoing treatment by a specialist and determine that they were consistent with the mild limitations identified by Drs. Dantoni, Sonthineni, and Abueg.

The Court does not disagree with Plaintiff that there is evidence in the record that could have supported greater restrictions than those ultimately found by the ALJ, nor would it have been impermissible for the ALJ to weigh the opinions of record differently.  But that does not mean that "no reasonable factfinder could have reached the same conclusion as the ALJ." *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022).  The ALJ further did not commit any reversible legal error in his assessment of Plaintiff's claim.  Accordingly, there is no basis for the Court to disturb the Commissioner's determination.

**CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 8) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:     February 29, 2024
           Rochester, New York